**Exhibit A**

| Borrower(s) | Lender | Loan |
|---|---|---|
| GEORGE NOBLE | U.S. Bank National Association | Number ▮▮▮▮ |
| | PENDLETON, KY OFFICE | Date 01/15/2015 |
| | 303 RIDGEWAY AVENUE | Maturity Date 02/01/2030 |
| 54 ADAMS LN | FALMOUTH, KY 41040 | Loan Amount $ 87,000.00 |
| SADIEVILLE, KY 40370-9000 | | Renewal Of |
| "I" means each Borrower above, jointly and severally. | "You" means the Lender, its successors and assigns. | |

**Note** - For value received, I promise to pay to you, or your order, at your address above, the principal sum of: ___$87,000.00___
___Dollars $ 87,000.00___
plus interest from ___01/21/2015___ at the rate of ___4.240___ % per year until ___maturity___.

☐ **Additional Finance Charge** - I also agree to pay a nonrefundable fee of $ _____ and it will be ☐ paid in cash.
  ☐ withheld from the proceeds. (If this fee is withheld from the proceeds, the amount is included in the principal sum.)

**Post Maturity Interest** - Interest will accrue after maturity on the unpaid balance of this note on the same basis as interest accrues before maturity.

☐ **Terms** - If checked, terms provided reflect an adjustment to the lowest annual percentage rate available for this loan product. This adjustment reflects a higher rate of interest or finance charge due to information contained in a consumer credit report. You obtained this report from, and I may obtain a free copy of it by contacting:

**Payments** - I will pay this note as follows:
  (a) ☐ Interest payments will be due _____.
      Principal payments will be due _____.
  (b) ☑ This note has ___180___ payments. The first payment will be in the amount of $ ___654.86___ and will be due ___03/01/2015___. A payment of $ ___654.86___ will be due on the ___1st___ day of each ___month___ thereafter. The final payment of the entire unpaid balance of principal and interest will be due ___02/01/2030___.

**The Purpose Of This Loan Is** ___Refinance 1st or 2nd Mortgage___

☑ **Late Charge** - I agree to pay a late payment charge if any scheduled payment (or part thereof) is made more than ___five___ days after it is due equal to $29.00.

☑ **Early Closure Fee** - If I prepay this loan in whole, I will pay you an early closure fee equal to _____
  1% of the original loan amount max $500
  if closed within the first three years

☑ **Returned Payment Charge** - I agree to pay a fee of $ ___25.00___ for each check, negotiable order of withdrawal, draft or electronic payment I arrange in connection with this loan that is returned because it has been dishonored.

**In the state of IOWA - THIS IS A CONSUMER CREDIT TRANSACTION**

**Security** - (If neither of the next two options are checked, this loan is not specifically secured except: 1. through cross collateralization from other loans; and 2. a security interest in all deposit accounts with U.S. Bank, N.A.)
  ☑ **Separate Security** - This loan is secured by separate ___Mortgage___ , dated ___01/15/2015___.
  ☐ **Security Agreement** - I give you a security interest in the Property described below. The rights I am giving you in this Property and the obligations this agreement secures are defined on page 4 of this agreement.
  54 ADAMS LN
  SADIEVILLE, KY 40370

This property will be used for ___Consumer___ purposes.

©1981, 1988, 1994, 2001 Wolters Kluwer Financial Services  Form USBNDAS-NDX  5/2/2013

(page 1 of 6)



NDSC 046    Form USBNDASNDX 09/2014

U.S. Bank
Customer Confidential

Loan number ███████

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost me. | AMOUNT FINANCED The amount of credit provided to me or on my behalf. | TOTAL OF PAYMENTS The amount I will have paid when I have made all scheduled payments. |
|---|---|---|---|
| 4.2390 % | $ 30,874.80 | $ 87,000.00 | $ 117,874.80 |

### INTEREST RATE AND PAYMENT SUMMARY

|  | Rate & Monthly | Payment |
|---|---|---|
| Interest Rate | 4.240% | |
| Principal + Interest Payment | $ | 654.86 |
| Estimated Taxes + Insurance (Escrow) | $ | |
| **Total Estimated**    Monthly Payment | $ | 654.86 |

☐ **Final Balloon Payment** due    : $

**No Guarantee to Refinance.** There is no guarantee that you will be able to refinance to lower your rate and payments.

**Security** - I am giving a security interest in    ☑ (description of other property)
     ☐ the Goods or Property being purchased.     54 ADAMS LN
     ☑ my deposit accounts and other rights to the payment of money from U.S. Bank, N.A.    SADIEVILLE, KY 40370
     ☑ Collateral securing other loans with you may also secure this loan.

☑ **Late Charge** - I agree to pay a late charge if any scheduled payment (or part thereof) is made more than _five_ days after it is due equal to $29.00

**Prepayment** - If I pay off this note early, I   ☑ may   ☐ will not   have to pay a penalty.

☑ **Assumption** - Someone buying the property securing this loan cannot assume this loan on its original terms.

☐ **Required Deposit** - The annual percentage rate does not take into account my required deposit.

Filing Fees $ _____ Non Filing Insurance $ _____

I can see my contract documents for any additional information about nonpayment, default, and any required repayment before the schedule date, and prepayment refunds and penalties.

**Payment Protection** - Basic Protection (life and disability benefits) or Plus Protection (life, disability, hospitalization and involuntary unemployment benefits) are not required to obtain credit and you will not provide them unless I sign and agree to pay the additional fee. If I want such payment protection, you will obtain it for me (if I qualify for coverage). My (Our) signature(s) below means I (we) want the coverages signed for, and only those coverages.

**Basic Coverage:**

☐ Single: Fee: $ _____ Term _____

Protected Borrower           D.O.B.

_____ Date

☐ Joint: Fee: $ _____ Term _____

Primary Protected Borrower        D.O.B.

_____ Date

Joint Protected Borrower        D.O.B.

_____ Date

**Plus Coverage:**

☐ Single: Fee: $ _____ Term _____

Protected Borrower           D.O.B.

_____ Date

☐ Joint: Fee: $ _____ Term _____

Primary Protected Borrower        D.O.B.

_____ Date

Joint Protected Borrower        D.O.B.

_____ Date

© 1981, 1988, 1994, 2001 Wolters Kluwer Financial Services  Form USBNDAS-NDX  8/2/2013

*(page 2 of 6)*



NDSC 046      Form USBNDASNDX 06/2014

| U.S. Bank Customer Confidential |
|---|

See the section titled "Monthly Outstanding Balance Payment Protection Fees" below for more information.

NONE: I/We do not desire payment protection of ANY KIND on this account. (ALL UNPROTECTED borrowers sign below)

_George Noble_        1-15-15
GEORGE NOBLE                    Date                                                        Date

☑ **Property Insurance** - Property insurance is required. I may obtain property insurance from anyone I want that is acceptable to you.

## ADDITIONAL TERMS OF THE NOTE

**DEFINITIONS** - "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW** - You are a National bank located in Ohio. The interest rate, fees and related charges that you can charge for this loan are pursuant to the law of the state of Ohio, regardless of where this loan is made or where I live. As for other issues, the law of my state of residence and the law of the state where any property is located will apply.

The fact that any part of this note cannot be enforced will not affect the rest of this note. Any change to this note or any agreement securing this note must be in writing and signed by you and me.

**THIS FORM** - This form is designed to be used for many types of transactions. A paragraph or section that begins with a "☐" that is not checked does not apply to this loan.

**PAYMENTS** - Each payment I make on this loan will be applied (to the extent of the payment) as follows to: (1) monthly outstanding balance payment protection fees, if I elect to buy such protection; (2) accrued interest; (3) principal (as explained below); (4) charges other than interest or principal, if any; and (5) principal. The portion applied to principal in step (3) above will be the difference between the *scheduled* payment amount and the sum of any monthly outstanding balance payment protection fee and the accrued interest.

**PREPAYMENT** - I may prepay this loan in whole or in part at any time. If I prepay in part, I must still make each later payment in the original amount as it becomes due until this note is paid in full.

**BALLOON PAYMENTS** - In the states of Idaho, Colorado, and Wyoming, under certain circumstances as defined by law in those states I may be obligated to refinance a balloon payment. If a balloon payment arises, if you are obligated under state law to refinance that payment, and if federal law does not preempt state law, then you will refinance a balloon.

**INTEREST** - Interest will accrue on the unpaid principal balance until paid in full. For interest calculation, the accrual method will determine the number of days in a year. The interest rate and other charges on this note will never exceed the highest rate or charge allowed by law for this loan. If the amount collected is found to exceed the highest rate or charge allowed, you will refund an amount necessary to comply with the law.

**CURE RIGHTS** - In some circumstances (and some states in which this note is used) your rights and remedies are subject to a duty to give me a right to cure a default and to get notice of that right before you can exercise some of your remedies. The states include: (and may not be limited to) Colorado, Iowa, Kansas, Missouri, Nebraska, South Carolina, and West Virginia. There also may be similar rights of reinstatement, cure and redemption in some states when real property or a residence is the collateral. You will provide such rights, and notice of such rights before exercising your remedies, as provided by law.

**DEFAULT** - I will be in default on this loan and any agreement securing this loan if:
1. I fail to make a payment in full when due; or
2. Your prospect of payment, performance, or ability to realize upon the property is significantly impaired.

If any of us are in default on this note or any security agreement, you may exercise your remedies against any or all of us.

**REMEDIES** - Subject to the CURE RIGHTS section above, if I am in default on this loan or any agreement securing this loan, you may exercise your rights provided by law and this agreement. I also understand and agree to the following:
1. You may accelerate the due date of the unpaid principal balance of the loan, plus accrued interest and charges, making it due in its entirety before the scheduled due date.
2. You may realize on any property securing this transaction.
3. You may demand more security or new parties obligated to pay this loan (or both) in return for not using any other remedy.
4. You may make a claim for any and all insurance benefits or refunds that may be available.

If I default and you choose not to exercise a remedy, you do not lose the right to treat the event as a default if it happens again.

**COSTS OF COLLECTION** - I agree to pay the costs you incur to collect this debt and realize on any collateral in the event of my default.

In the event of my bankruptcy, and without regard to my state of residence, these costs will include your reasonable attorney's fees for an attorney who is not your salaried employee in the bankruptcy proceedings.

The following additional fees and issues will depend on whether we have to collect this loan in a listed state:

In Arizona, California, Illinois, Kentucky, Maryland, Michigan, Minnesota, Mississippi, Montana, Nevada, New Mexico, Oregon, Pennsylvania, Rhode Island, South Dakota, Tennessee, Utah, Vermont, Virginia and Washington these costs will include your reasonable attorney's fees (for an attorney who is not your salaried employee).

In Arkansas these costs will include your reasonable attorney's fees (for an attorney who is not your salaried employee) not to exceed 10% of the amount of principal and accrued interest.

In Colorado, Maine, North Carolina, and South Carolina these costs will include your reasonable attorney's fees (for an attorney who is not your salaried employee) not to exceed 15% of the unpaid debt for collection after default.

In Delaware these costs will include reasonable attorney's fees after default and referral to an attorney not your regularly salaried employee, court costs, alternative dispute resolution costs, and other collection costs, including fees and charges of collection agencies.

In Florida these costs include your reasonable attorneys' fees of ten percent (10%) of the principal sum due on this note or such larger amount as may be reasonable and just.

In Georgia, these costs include attorney's fees of 15 percent of the principal and interest then owed. I waive and renounce any exemption I may be entitled to under Georgia law as to any property that secures this debt. I assign any such exemption to you.

In Idaho these costs will include your reasonable attorney's fees (for an attorney who is not your salaried employee). This provision for attorney's fees does not apply if this loan is a consumer loan with a principal amount of $1,000.00 or less.

In Indiana, these costs will include your reasonable attorney's fees (for an attorney who is not your salaried employee); and in any collection efforts, I waive any relief I might be entitled to from evaluation and appraisement.

In Iowa, Nebraska, North Dakota, Ohio and West Virginia these costs will not include attorney's fees.

In Kansas these costs will include your reasonable attorney's fees or collection agency fees, up to 15% of the unpaid amount due and payable under this note. You are entitled to the collection of attorneys' fees or collection agency fees, but not both. This provision is applicable only if collection is handled by someone other than a salaried employee of yours.

In Louisiana, these costs include your reasonable attorneys' fees not to exceed 25% of the unpaid debt after default and referral to an attorney for collection.

In Massachusetts this includes your reasonable attorneys' fees, except when prohibited by law (such as on loans of less than $1,000).

In Missouri and Alabama, these costs will include your reasonable attorney's fees (for an attorney who is not your salaried employee) if it is necessary to bring suit of 15% of the amount due and payable under this note.

In New Hampshire, this includes your reasonable attorneys' fees. If I successfully assert a partial defense or set-off, recoupment or counterclaim to an action you bring, the court may reduce the amount of attorneys' fees that you may recover from me. If I prevail in an action or defense against you, I may recover the amount of my reasonable attorneys' fees.

In Oklahoma these costs will include your reasonable attorney's fees (for an attorney who is not your salaried employee) not to exceed 15% of the unpaid debt after default; this provision for attorney's fees does not apply to certain supervised loans as provided in Okla. Statutes 14A § 3-514.

© 1981, 1988, 1994, 2001 Wolters Kluwer Financial Services  Form USBNDAS-NDX  8/2/2013

*(page 3 of 6)*

VER 1    NDSC 046    Form USBNDASNDX 06/2014

U.S. Bank
Customer Confidential

**MONTHLY OUTSTANDING BALANCE PAYMENT PROTECTION FEES -**
The fees for the payment protection coverage (Basic or Plus) are calculated on the monthly outstanding balance method. This means that each month you multiply the loan principal balance by the monthly fee rate (which is a rate per $100 of debt per month).

Each of the fees quoted above for payment protection coverage are the total of all the monthly fees for the respective coverage plan, based on the *assumed* monthly principal balances. These assumed monthly principal balances assume that the *interest rate will remain the same* throughout the term of the transaction (which is not likely if this is a variable rate transaction), and that I will make all my payments in full and on time.

If the interest rate increases, and my periodic payment does not increase each month (as is normally how you schedule payments for variable rate transactions) then the amount I will pay for payment protection coverage I have bought from you will be more. Likewise, if the interest rate declines, or if I prepay, the amount for payment protection will decline, as will the amount and length of coverage. In either case, this effect on fee is because the actual monthly principal balances will not be as assumed.

If I buy payment protection coverage from you, the fees are included in my periodic payments, and in the TOTAL OF PAYMENTS section. If I cancel the coverage before the scheduled maturity date, my periodic payment amounts will remain as originally scheduled. This means that more of my payment will be available for the principal than otherwise would be true, and the number of payments, or the amount of my final payment, will be less than it otherwise would be. (See the paragraph titled PAYMENTS above.)

**ERRORS AND OMISSIONS -** In consideration of this agreement, I agree to fully cooperate with you (including any closing agent acting on your behalf) to correct or adjust any errors or omissions in this closing documentation. I agree that you shall determine whether any such errors or omissions exist, and the extent to which they need to be corrected. I will comply with any of your requests as soon as reasonably practicable, but in any event within 30 days of such requests. If I do not comply with any of your requests within 30 days, I understand and agree that I will be responsible for any costs and damages incurred by you due to the error or omission, which shall include (without limitation) actual expenses, legal fees, losses, and penalties.

**OBLIGATIONS INDEPENDENT -** This paragraph applies if there are multiple parties (for example, a maker and a guarantor or co-maker) who are obligated to pay this loan. We understand that the obligation of each of us to pay this loan is independent of the obligation of the others to pay this loan. You may, without notice, release or give up any right you may have, extend new credit, renew or change this obligation, as to any of us, without affecting the obligation of any others (until this loan is paid in full).

You may fail to perfect any security interest in, impair, or release any security and I (we) will still be obligated to pay this loan.

**WAIVER -** I waive (to the extent permitted by law) demand, presentment, protest, notice of dishonor and notice of protest.

**FINANCIAL STATEMENTS -** I will give you any financial statements or information that you feel is necessary. All financial statements and information I give you will be correct and complete.

**PURCHASE MONEY LOAN -** If this is a Purchase Money Loan, you may include the name of the seller on the check or draft for this loan.

**NAME AND LOCATION -** My name and address indicated on page 1 are my exact legal name and my principal residence. I will provide you with at least 30 days' notice prior to changing my name or principal residence.

**SKIP PAYMENTS -** From time to time, you may offer me the chance to skip a payment on this loan. If I choose to accept this offer, I agree to pay a fee up to $50.00, and the term of this loan will be extended one month.

### ADDITIONAL TERMS OF THE SECURITY AGREEMENT

**SECURED OBLIGATIONS -** This security agreement secures this loan (including all extensions, renewals, refinancings and modifications) and any other debt I have with you now or later. Property described in this security agreement will not secure other such debts if the Property is my principal dwelling. Also, this security agreement will not secure other debts if this security interest is in household goods and the other debt is a consumer loan. This security agreement will last until it is discharged in writing.

For the sole purpose of determining the extent of a purchase money security interest arising under this security agreement:
(a) Payments on any nonpurchase money loan also secured by this agreement will not be deemed to apply to the Purchase Money Loan; and
(b) Payments on the Purchase Money Loan will be deemed to apply first to the nonpurchase money portion of the loan, if any, and then to the purchase money obligations in the order in which the items were acquired.

No security interest will be terminated by application of this formula. "Purchase Money Loan" means any loan of which the proceeds, in whole or in part, are used to acquire any property securing the loan and all extensions, renewals, consolidations and refinancings of such loan.

**PROPERTY -** The word "Property," as used here, includes all property that is listed in the security agreement on page 1. If a general description is used, the word "Property" includes all my property fitting the general description. Property also means all benefits that arise from the described Property (including all proceeds, insurance benefits, payments from others, interest, dividends, stock splits and voting rights). It also means property that now or later is attached to, is a part of, or results from the Property, and all supporting obligations. "Proceeds" includes anything acquired on the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising out of the Property; and any collections and distributions on account of the Property.

**OWNERSHIP AND DUTIES TOWARD PROPERTY -** Unless a co-owner(s) of the Property signed a third party agreement, I represent that I own all the Property. I will defend the Property against any other claim. I agree to do whatever you require to perfect your interest and keep your priority. I will not do anything to harm your position. I will not use the Property for a purpose that will violate any laws or subject the Property to forfeiture or seizure.

I will keep the Property in my possession (except if pledged and delivered to you). I will keep it in good repair and use it only for its intended purposes. I will keep it at my address unless we agree otherwise in writing.

I will not try to sell or transfer the Property, or permit the Property to become attached to any real estate, without your written consent. I will pay all taxes and charges on the Property as they become due. I will inform you of any loss or damage to the Property. You have the right of reasonable access in order to inspect the Property.

If the Property is a motor vehicle, I represent that it is not a vehicle seized pursuant to any federal, state or local forfeiture law.

**INSURANCE -** I agree to buy the insurance coverages required on page 3 covering the Property against the risks and for the amounts you require. I will name you as loss payee on any such policy. If there is an insured loss, you may require added security on this loan if you agree that insurance proceeds may be used to repair or replace the Property. I agree that if the insurance proceeds do not cover the amounts I still owe you, I will pay the difference. I will buy the insurance from a firm authorized to do business in the appropriate state. The firm will be reasonably acceptable to you. I will keep the insurance until all debts secured by this agreement are paid.

**COLLATERAL PROTECTION INSURANCE -** Unless I provide you with evidence of the insurance coverage required by my agreement with you, you may purchase insurance at my expense to protect your interests in my collateral. This insurance may, but need not, protect my interests. The coverage *that you purchase may not pay any claim that I make or any claim that is made* against me in connection with the collateral. I may later cancel any insurance purchased by you, but only after providing you with evidence that I have obtained insurance as required by our agreement. If you purchase insurance for the collateral, I will be responsible for the costs of that insurance, including interest and any other charges you may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to my total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance I may be able to obtain on my own. I agree that the cost of such insurance will be due immediately.

**FILING -** I authorize you to file a financing statement covering the Property. I agree to comply with and facilitate your requests in connection with obtaining possession of or control over the Property until this security agreement is terminated. A copy of this security agreement may be used as a financing statement when allowed by law.

**DEFAULT AND REMEDIES -** If I am in default, in addition to the remedies listed in the note portion of this document and subject to any of the limitations in the CURE RIGHTS paragraph, you may (after giving notice and waiting a period of time, if required by law):
(a) Pay taxes or other charges, or purchase any required insurance, if I fail to do these things (but you are not required to do so). You may add the amount you pay to this loan and accrue interest on that amount at the interest rate(s) in effect from time to time, on this note until paid in full;
(b) Require me to gather the Property and any related records and make it available to you in a reasonable fashion;
(c) Take immediate possession of the Property, but in doing so you may not breach the peace or unlawfully enter onto my premises. You may sell, lease or dispose of the Property as provided by law. (If the Property includes a manufactured home, you will begin the repossession by giving me notice and an opportunity to cure my default, as

© 1981, 1988, 1994, 2001 Wolters Kluwer Financial Services  Form USBNDAS-NDX  8/2/2013

*(page 4 of 6)*

NDSC 048        Form USBNDASNDX 08/2014



U.S. Bank
Customer Confidential

required by law.) You may apply what you receive from the sale of the Property to your expenses and then to the debt. If what you receive from the sale of the Property is less than what I owe you, you may take me to court to recover the difference (to the extent permitted by law); and

(d) Keep the Property to satisfy the debt.

I agree that when you must give notice to me of your intended sale or disposition of the Property, the notice is reasonable if it is sent to me at my last known address by first class mail 10 days before the intended sale or disposition. I agree to inform you in writing of any change in my address.

ASSUMPTIONS - This security agreement and any loan it secures cannot be assumed by someone buying the Property from me. This will be true unless you agree in writing to the contrary. Without such an agreement, if I try to transfer any interest in the Property, I will be in default on all obligations that are secured by this security agreement.

---

**ARIZONA: Motor Vehicle as Collateral:** The following information applies if this security agreement, or another that secures this note includes a motor vehicle as that term may be defined by Arizona law:

It is unlawful to fail to return a motor vehicle subject to a security interest within thirty days after receiving notice of default. Any notice of default sent me will be mailed to my address given on page 1. It is my responsibility to tell you my new address if it changes. (Unlawful failure to return a motor vehicle subject to a security interest is a class 6 felony, which for a first offense carries a maximum jail sentence of 1.5 years. The maximum jail sentence may be greater if the defendant has a prior criminal record. The court may impose a fine of no more than $150,000.)

---

**Deficiency Notice: This notice applies if the collateral involves a motor vehicle that is consumer goods.**
**NOTICE: THE MOTOR VEHICLE IN THIS TRANSACTION MAY BE SUBJECT TO REPOSSESSION. IF IT IS REPOSSESSED AND SOLD TO SOMEONE ELSE, AND ALL AMOUNTS DUE TO THE SECURED PARTY ARE NOT RECEIVED IN THAT SALE, I MAY HAVE TO PAY THE DIFFERENCE.**

---

This notice applies to **Missouri** customers specifically and is generally true for all customers:
**ORAL AGREEMENTS:** Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

---

**NOTICE TO COSIGNER**
You (the cosigner) are being asked to guaranty this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You also may have to pay late fees or collection costs, which increase this amount.

The creditor can collect this debt from you without first trying to collect from the borrower. The creditor can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record.

This notice is not the contract that makes you liable for the debt.

Garnishment is not a remedy available in Pennsylvania and Texas.

---

**THIRD PARTY AGREEMENT**
For the purposes of the provisions within this enclosure "I," "me" or "my" means the person signing below and "you" means the Lender identified on page 1.

I agree to give you a security interest in the Property that is described on page 1. I agree to the terms of this note and security agreement but I am in no way personally liable for payment of the debt. This means that if the Borrower defaults, my interest in the Property may be used to satisfy the Borrower's debt. I agree that you may, without releasing me or the Property from this Third Party Agreement and without notice or demand upon me, extend new credit to any Borrower, renew or change this note or security agreement one or more times and for any term, or fail to perfect your security interest in, impair, or release any security (including guaranties) for the obligations of any Borrower.

I HAVE RECEIVED A COMPLETED COPY OF THIS NOTE AND SECURITY AGREEMENT.

_____
Date

_____
Date

_____
Date

---

**AUTOMATIC WITHDRAWAL:**
I    ☑ DO    ☐ DO NOT    want Automatic Withdrawal.

By signing below I authorize you to automatically withdraw my regular payment from my transaction account listed below on each payment date.

Account Type: ☑ Checking  ☐ Savings
Account Number: ██████████
Bank Routing Number: ██████████

*George Noble*                           1-15-15
GEORGE NOBLE                              Date

_____
Date

**ACH AND U.S. BANK PACKAGE CANCELLATION FEE:**
I understand that I received a preferred rate for having a U.S. Bank Package with either a U.S. Bank checking account or Automatic Payments on this loan, or both. If I terminate the Automatic Payments or the U.S. Bank Package, either in whole or in part, I agree to pay U.S. Bank a cancellation fee of $ 50.00 _____ . I understand that automatic payments stop, and must be re-contracted for, if, for example, I close my account (without arranging for automatic payment from another account), there is insufficient funds in the account, or I stop payment on an automatic payment.

---

© 1981, 1988, 1994, 2001 Wolters Kluwer Financial Services  Form USBNDAS-NDX  8/2/2013

(page 5 of 6)

NDSC 048        Form USBNDASNDX 06/2014

U.S. Bank
Customer Confidential

This note is a "transferable record" as defined in applicable law relating to electronic transactions. Therefore, the holder of this note may, on behalf of the maker of this note, create a microfilm or optical disk or other electronic image of this note that is an authoritative copy as defined in such law. The holder of this note may store the authoritative copy of such note in its electronic form and then destroy the paper original as part of the holder's normal business practices. The holder, on its own behalf, may control and transfer such authoritative copy as permitted by such law.

**SIGNATURES** - I agree to the terms set out on pages 1 thru 6 of this agreement. I have received a copy of this document on today's date.

Cosigners - see notice above before signing.

In the notices in this box "you" means the borrower(s):

**Notice to Consumer:** 1. Do not sign this Agreement before you read it. 2. You are entitled to a copy of this Paper. 3. You may prepay the unpaid balance at any time. If you prepay this loan you ☑ MAY ☐ WILL NOT    have to pay a penalty.

**CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

_George Noble_          1-15-15
GEORGE NOBLE                          Date

_____          _____
                                      Date

_____          _____
                                      Date

_____          _____
                                      Date

Loan number: ██████

Loan Originator Organization: U.S. Bank National Association
Loan Originator Organization ID: ██████
Originator Name: Kelly Marie Fromeyer
Originator ID: ██████

© 1981, 1988, 1994, 2001 Wolters Kluwer Financial Services  Form USBNDAS-NDX  8/2/2013

(page 6 of 6)



VER 1    NDSC 046    Form USBNDASNDX 06/2014

U.S. Bank
Customer Confidential

**Exhibit B**

BK 379 pg 476

Prepared By:▮▮▮▮▮▮▮
Southwest Financial Services, Ltd.
1671 Park Rd Suite 2
FT. Wright, KY 41011

LODGED FOR RECORD
HARRISON COUNTY CLERK

FEB 09 2015

TIME _11:35AM_
LINDA B. FURNISH
CLERK HARRISON CO.

Return To (name and address):
Indecomm Global Services
2925 Country Drive
Little Canada, MN 55117

_____ Commonwealth of Kentucky _____         _____ Space Above This Line For Recording Data _____

# MORTGAGE
(With Future Advance Clause)

☐ Master form recorded by ......................................................................
                              (name of person causing the instrument to be recorded).

By ......................................................................

By ......................................................................
    (Signature)                                  (Date)

1. **DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is ..........................01/15/2015..........................
The parties and their addresses are:

    MORTGAGOR:
    GEORGE NOBLE AND RESA NOBLE, HUSBAND AND WIFE

    ☐ If checked, refer to the attached Addendum incorporated herein, for additional Mortgagors, their signatures and
    acknowledgments.

    LENDER:
    U.S. Bank National Association,
    a national banking association organized under the laws of the United States
    425 Walnut Street
    Cincinnati, OH 45202

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure
the Secured Debt (defined below) and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains,
conveys and mortgages to Lender the following described property:
    See attached Exhibit "A"

State of Kentucky
County of Harrison
I, Linda B. Furnish, Clerk of the Harrison County Court, do hereby
certify that the foregoing ___mtg___ was on the _9th_ day
of ___Feb___ 20_15_ at _11:35_AM; lodged in my office
certified as above for record; whereupon, the same and this certificate
are now duly recorded.
Given under my hand this the _10th_ day of _Feb_ 20_15_
Linda B. Furnish Clerk _Shelley Coppage_ ,D.C.

(page 1 of 6)

GN  RN

The property is located in ..HARRISON..COUNTY............................................. at .................................................
(County)

..54..ADAMS..LN.,..SADIEVILLE............................................................................., Kentucky .....40370-9000..
(Address)                                                  (City)                                          (ZIP Code)

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ ..87,000.00.................................. . This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:

   A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions.    *(Your description below must include date and maturity date.)*
   Borrower(s): GEORGE NOBLE
   Principal/Maximum Line Amount: 87,000.00
   Maturity Date: 02/01/2030
   Note Date: 01/15/2015

   B. All future advances from Lender to Mortgagor or other future obligations of Mortgagor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Mortgagor in favor of Lender after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Mortgagor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

   C. All obligations Mortgagor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender.

   D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.
   This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

5. **PAYMENTS.** Mortgagor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

6. **WARRANTY OF TITLE.** Mortgagor warrants that Mortgagor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to grant, bargain, convey, sell and mortgage the Property. Mortgagor also warrants that the Property is unencumbered, except for encumbrances of record.

7. **PRIOR SECURITY INTERESTS.**    With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees:

   A. To make all payments when due and to perform or comply with all covenants.

   B. To promptly deliver to Lender any notices that Mortgagor receives from the holder.

   C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

8. **CLAIMS AGAINST TITLE.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

*GN*  *KN*  *(page 2 of 6)*

© 1994 Wolters Kluwer Financial Services - Bankers Systems™ Form USB-REMTG-KY 11/16/2012  6092AD 11/12

9.  **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

10. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor shall not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims and actions against Mortgagor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

11. **AUTHORITY TO PERFORM.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

12. **ASSIGNMENT OF LEASES AND RENTS.** Mortgagor irrevocably grants, bargains, conveys and mortgages to Lender as additional security all the right, title and interest in and to any and all existing or future leases, subleases, and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as "Leases") and rents, issues and profits (all referred to as "Rents"). Mortgagor will promptly provide Lender with true and correct copies of all existing and future Leases. Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default under the terms of this Security Instrument.

Mortgagor agrees that this assignment is immediately effective between the parties to this Security Instrument. Mortgagor agrees that this assignment is effective as to third parties when Lender takes affirmative action prescribed by law, and that this assignment will remain in effect during any redemption period until the Secured Debt is satisfied. Mortgagor agrees that Lender may take actual possession of the Property without the necessity of commencing legal action and that actual possession is deemed to occur when Lender, or its agent, notifies Mortgagor of default and demands that any tenant pay all future Rents directly to Lender. On receiving notice of default, Mortgagor will endorse and deliver to Lender any payment of Rents in Mortgagor's possession and will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Any amounts collected will be applied as provided in this Security Instrument. Mortgagor warrants that no default exists under the Leases or any applicable landlord/tenant law. Mortgagor also agrees to maintain and require any tenant to comply with the terms of the Leases and applicable law.

13. **LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Mortgagor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Mortgagor will perform all of Mortgagor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

14. **DEFAULT.** Mortgagor will be in default if any party obligated on the Secured Debt fails to make payment when due. Mortgagor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

15. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure or other notices and may establish time schedules for enforcement actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and enforce this Security Instrument in a manner provided by law if Mortgagor is in default.

*(page 3 of 6)*

*GN*    *RN*

© 1994 Wolters Kluwer Financial Services - Bankers Systems™ Form USB-REMTG-KY 11/16/2012  6092AD 11/12

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents. All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after enforcement proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

16. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Mortgagor agrees to pay all of Lender's expenses if Mortgagor breaches any covenant in this Security Instrument. Mortgagor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Mortgagor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees as provided by law, court costs, and other legal expenses. This amount does not include attorneys' fees for a salaried employee of the Lender. This Security Instrument shall remain in effect until released. Mortgagor agrees to pay for any recordation costs of such release.

17. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

   Mortgagor represents, warrants and agrees that:
   A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

   B. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

   C. Mortgagor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor shall take all necessary remedial action in accordance with any Environmental Law.

   D. Mortgagor shall immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

18. **CONDEMNATION.** Mortgagor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

19. **INSURANCE.** Mortgagor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

   All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Mortgagor. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

20. **ESCROW FOR TAXES AND INSURANCE.**   Unless otherwise provided in a separate agreement, Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

21. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.**   Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and Lender's lien status on the Property.

22. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.**   All duties under this Security Instrument are joint and individual. If Mortgagor signs this Security Instrument but does not sign an evidence of debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Mortgagor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Mortgagor's consent. Such a change will not release Mortgagor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Mortgagor and Lender.

23. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.**   This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

24. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.

25. **WAIVERS.** Except to the extent prohibited by law, Mortgagor waives all right to marshalling of liens and assets and homestead exemption rights relating to the Property.

26. **OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

    ☐ **Revolving Credit Plan.**   The Secured Debt includes a revolving credit plan as defined by K.R.S. 382.385 (1)(b). Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

    ☐ **Line of Credit.** The Secured Debt includes a line of credit provision as defined by K.R.S. 382.385 (1)(a). Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

    ☐ **Construction Loan.** This Security Instrument secures an obligation incurred for the purpose of erecting, improving, or adding to a building on the Property.

    ☐ **Fixture Filing.** Mortgagor grants to Lender a security interest in all goods that Mortgagor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

*GN*     *(page 5 of 6)*
*BN*

☐ **Riders.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]

    ☐ Condominium Rider    ☐ Planned Unit Development Rider    ☐ Other ...................................................

☐ **Additional Terms.**

**SIGNATURES:** By signing below, Mortgagor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Mortgagor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

.......................................................
(Signature) GEORGE NOBLE

.......................................................
(Signature) RESA NOBLE

Loan Originator Organization ID: ▓▓▓▓▓     Originator ID ▓▓▓▓▓▓

Loan Originator Organization:     Originator Name: **KELLY MARIE FROMEYER**
**U.S. Bank National Association**

**ACKNOWLEDGMENT:**

(Individual)

COMMONWEALTH OF *KENTUCKY* ................ COUNTY OF *Pendleton* ........ } ss.

This instrument was acknowledged before me this ....15th.... day of *January 2015* .........

by .GEORGE NOBLE AND RESA NOBLE, HUSBAND AND WIFE.................................................

.......................................................................................................................

I certify (1) that the person acknowledging appeared before me and acknowledged that he or she executed the instrument, and (2) that I knew the person acknowledging or had satisfactory evidence that the person acknowledging was the person described in and who executed the instrument.

My commission expires:

> KELLY M. FROMEYER
> Notary Public-State at Large
> KENTUCKY - Notary ID ▓▓▓▓▓
> My Commission Expires September 19, 2018

.......................................................
(Notary Public)

This instrument was prepared by .......................................................

RITA ALTIMARI
Southwest Financial Services
537 E. Pete Rose Way, Suite 300
Cincinnati, OH 45202
(Signature of Preparer)

© 1994 Wolters Kluwer Financial Services - Bankers Systems™ Form USB-REMTG-KY 11/16/2012  6092AD 11/12

## EXHIBIT "A" LEGAL DESCRIPTION

Page: 1 of 1

Account #: ██████████
Order Date : 12/03/2014
Reference :
        Name : GEORGE NOBLE
Deed Ref ██████████

Index #:
Registered Land:
        Parcel #: ███████████████

SITUATED IN THE COUNTY OF HARRISON AND STATE OF KENTUCKY, TO-WIT:
SITUATED ON THE NORTH SIDE OF KENTUCKY HIGHWAY #32 (CONNERSVILLE-DAVIS ROAD)
AND EAST SIDE OF ADAMS LANE AT CONNERSVILLE APPROXIMATELY SEVEN MILES WEST
OF CYNTHIANA IN HARRISON COUNTY KENTUCKY AND WHICH IS MORE PARTICULARLY
DESCRIBED AS FOLLOWS TO-WIT:

BEGINNING AT A P-K NAIL IN THE CENTER OF KENTUCKY HIGHWAY #32 (CONNERSVILLE-
DAVIS ROAD), AND CORNER TO LOT 7; THENCE WITH THE LINE OF LOT 7, N 08 DEG. 39'53"
E 394.35 FEET TO AN IRON PIN IN THE LINE OF LOT 9; THENCE WITH THE LINE OF LOT 9,
N 82 DEG. 54'28" W 369.83 FEET TO A RAILROAD SPIKE IN THE CENTER OF ADAMS LANE;
THENCE WITH THE CENTER OF ADAMS LANE S 23 DEG. 00'35" W 402.29 FEET TO A P-K NAIL
IN THE INTERSECTION OF THE CENTERLINES OF ADAMS LANE AND KENTUCKY HIGHWAY
#32 (CONNERSVILLE-DAVIS ROAD); THENCE WITH THE CENTER OF SAID HIGHWAY FOR TWO
CALLS N 88 DEG. 15'20" E 74.89 FEET TO A P-K NAIL, S 80 DEG. 12'42" E 395.78 FEET TO THE
BEGINNING AND CONTAINING 3.698 ACRES.

BEING THE SAME PROPERTY CONVEYED BY DEED RECORDED IN VOLUME 177, PAGE 364 OF
THE HARRISON COUNTY, KENTUCKY RECORDS.

LESS AND EXCEPT:

SITUATED IN THE COUNTY OF HARRISON AND STATE OF KENTUCKY, TO-WIT:
BEING ALL OF LOT 8-A CONTAINING 2.005 ACRES AS SET OUT ON THE RECORDED PLAT
FOR GEORGE NOBLE AND RESA NOBLE, CONNERSVILLE PIKE (KY 32) AND ADAMS LANE, OF
RECORD IN PLAT CABINET 6, SHEET 144A, HARRISON COUNTY COURT CLERK'S OFFICE, TO
WHICH REFERENCE IS MADE FOR A MORE PARTICULAR DESCRIPTION.

BEING THE SAME PROPERTY CONVEYED BY DEED RECORDED IN VOLUME 325, PAGE 484, OF
THE HARRISON COUNTY, KENTUCKY RECORDS.

SUBJECT TO ALL EASEMENTS, COVENANTS, CONDITIONS, RESERVATIONS, LEASES AND
RESTRICTIONS OF RECORD, ALL LEGAL HIGHWAYS, ALL RIGHTS OF WAY, ALL ZONING,
BUILDING AND OTHER LAWS, ORDINANCES AND REGULATIONS, ALL RIGHTS OF TENANTS IN
POSSESSION, AND ALL REAL ESTATE TAXES AND ASSESSMENTS NOT YET DUE AND PAYABLE.